Filed 6/3/25  In re E.C. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.C. at al., Persons Coming Under the Juvenile Court Law. | B341904, B342196 (Los Angeles County Super. Ct. No. 21CCJP03306A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>D.O. et al.,<br><br>    Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County.  Marguerite D. Downing, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant D.O.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant L.C.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

L.C. (mother) challenges the juvenile court's orders terminating parental rights to her daughters, S.M. and E.C., who have different fathers.  Mother's sole contention is that the trial court erred in finding compliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.[1]) because the ICWA inquiry was inadequate as to the fathers.  D.O., E.C.'s father, joins mother's ICWA challenge. Because sufficient evidence supports the court's finding, we affirm.

## BACKGROUND

### 1.    The Family

Mother has two daughters, S.M. and E.C. (children), and a son A.M., who is not the subject of this appeal.  J.M. is the father of S.M. and A.M., and D.O. is E.C.'s father.  Mother met both when she lived in Connecticut, which is where the fathers remain.  Mother suffers from psychiatric disorders and substance abuse, and has a history of domestic violence with J.M.  A dependency case was opened in Connecticut based on this

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

violence, but mother absconded with her daughters to California while that case was pending.

## 2. Procedural Background and ICWA-related Facts

In June 2021, before the Los Angeles County Department of Children and Family Services (Department) filed the section 300 petition, mother and J.M. each told the Department they had no known Indian ancestry.

In July 2021, the Department filed a petition requesting the juvenile court exert dependency jurisdiction over S.M. and E.C., alleging that mother and J.M. engaged in domestic violence in the children's presence, and that mother has substance abuse and mental health problems placing the children in danger. D.O. filed an ICWA-020 form stating he had no Indian ancestry. At the detention hearing, the juvenile court found no "reason to know" E.C. is an Indian child.

In August 2021, mother filed an ICWA-020 form stating she had no Indian ancestry, and D.O. and J.M. each denied having Indian ancestry. The same month, the court found no reason to know that the children are Indian children. The Department filed an amended petition to add allegations of J.M. physically abusing the children, his drug use, and mother's abduction of the children from Connecticut.

At the September 2021 jurisdiction and disposition hearing, the juvenile court sustained the amended petition, removed the children from all parents, and ordered reunification services for all parents.

D.O. appealed from these orders. (See *In re E.C.* (Aug. 18, 2023, B315124) [nonpub. opn.].)

3

In November 2021, a social worker contacted J.M.'s parents, G.M. and E.G., and his sister H.M., who each expressed some interest in caring for the children.

At the August 2022 six-month review hearing, the juvenile court continued family reunification services for D.O. and mother, and noted that J.M. had waived reunification services.

The next year, in August 2023, the Department called the number they had for J.M.'s parents, E.G. and G.M., but it was not in service. The Department also tried to call H.M., but an unknown person answered and stated that they did not know H.M. Later that month, we affirmed the juvenile court's jurisdictional finding. The Department had conceded its ICWA inquiry was inadequate, so we remanded with directions to the Department and the juvenile court to comply with ICWA. (*In re E.C.*, *supra*, B315124.)

In September 2023, the children's foster parents denied knowing of any Indian ancestry of the children.

In November 2023, the juvenile court terminated D.O.'s reunification services.

In December 2023, maternal grandmother reported she had no Indian ancestry on her side of the family and that she did not believe maternal grandfather, who lives in Mexico, had any either. She did not provide maternal grandfather's contact information. D.O.'s mother also stated she had no Indian ancestry in her family, and neither did her husband's side of the family.

In February 2024, maternal great aunt, Y.C., who is the sister-in-law of D.O.'s mother and thus also a paternal great aunt, reported that neither she nor her husband have Indian ancestry.

4

In March 2024, a different maternal great aunt, maternal aunt, and maternal grandfather all reported no Indian ancestry. The same month, the Department asked J.M. for his relatives' contact information, and he responded, "I don't associate with my family anymore so I don't know how'd that be possible."

In April 2024, the children's therapist and foster parents reported they did not know the children to have Indian ancestry.

In May 2024, D.O. filed a petition under section 388, which the juvenile court denied. At the permanency planning hearing, the court found adoption to be the appropriate plan and found no reason to know that the children were Indian children.

D.O. filed a section 388 petition to request that E.C. be placed with D.O.'s mother in Connecticut, in response to which the trial court allowed the "relatives [to be] assessed," while indicating it did not intend to move the children anywhere.

In August 2024, the court found that it had no reason to know that the children are Indian children, but ordered the Department to continue to investigate.

On November 5, 2024, the juvenile court found no reason to know the children were Indian children and terminated all parental rights over S.M. and E.C. Father appealed from these orders.

## DISCUSSION

### 1. Applicable Law

ICWA was enacted "out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies.'" (*Haaland v. Brackeen* (2023) 599 U.S. 255, 265 [143 S.Ct. 1609].) It "aims to keep Indian children connected to Indian families." (*Ibid.*) To that end, under ICWA and

California law implementing it (§§ 224–224.6), a juvenile court and the Department have duties to assess whether a child in a dependency action is an "Indian child." (§§ 224.2, 224.3.)

The Department and juvenile court have "three distinct duties" under ICWA. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) The Department discharges its initial duty by "asking" family members "whether the child is or may be an Indian child." (§ 224.2, subd. (b).) This includes asking not only the child's parents, but also others, including but not limited to, "extended family members." (*Ibid.*) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case to ask each participant present "whether they know or have reason to know that the child is an Indian child." (*Id.*, subd. (c).)

The second duty, which is triggered if there is "reason to believe that an Indian child is involved," is the duty of the Department or the juvenile court to "make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) This involves conducting further interviews and contacting the Bureau of Indian Affairs, the Department of Social Services, and any tribe that might have information. (§ 224.2, subd. (e).)

The third duty is the duty to notify the relevant Indian tribes. (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).) This duty is triggered if the Department or the court "knows or has reason to know . . . that an Indian child is involved," which occurs in one of six statutorily defined circumstances. (§§ 224.3, subd. (a), 224.2, subd. (d)(1)–(6).)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1134 (*Dezi C.*).) Although the Court in *Dezi C.* expressly declined to decide what standard

6

of review applies to a finding that an ICWA inquiry was adequate, it noted "that the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' " "subject to a deferential standard of review." (*Dezi C.*, at pp. 1134, 1141; accord *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101.)

### 2. Analysis

Mother argues that the Department's initial inquiry into the fathers' Indian heritage was defective. With respect to S.M., mother faults the Department for not inquiring of her paternal grandparents (J.M.'s parents) and paternal aunt (H.M.) about their Indian ancestry.

We must first sort through some confusion in the record as to who J.M.'s parents are.[2] H.B. and G.B., on the one hand, and E.G. and G.M., on the other, are each identified as S.M.'s paternal grandparents. Other information in the record, obtained from J.M. himself, shows that he was born to "[G.M.] and [a] father who is unknown." Because H.B. and G.B. are scarcely mentioned, and only in a report from authorities in Connecticut, and because G.M. is repeatedly identified as paternal grandmother, and the record shows J.M. himself reported she was his mother, we understand—as the juvenile court likely did—that H.B. and G.B. are not in fact J.M.'s parents and that G.M. is J.M.'s mother.[3] Mother's reference to G.M. as J.M.'s "grandmother" is therefore incorrect.

---

[2] Neither party squarely addressed this issue in their briefs.

[3] One way to reconcile J.M.'s father being "unknown" and the identification of his father as E.G. is that the latter is merely

7

J.M. himself repeatedly denied having Indian ancestry. In November 2021, a social worker spoke with G.M., E.G., and paternal aunt H.M. about their interest in being caregivers for the children, but did not ask them whether they had Indian ancestry. In August 2023, however—after D.O. filed his prior appeal that included an ICWA challenge—the Department called the number it had for E.G. and G.M., but it was out of service. The Department also attempted to call H.M., but an unknown person answered the phone and stated they did not know her. The Department thereafter sought information about J.M.'s relatives from J.M., but he refused to provide any.

Mother acknowledges the Department's unsuccessful attempts to reach the known paternal relatives, as well as its request that J.M. provide his relatives' information, but she asserts the Department should have also contacted the Connecticut Department of Children and Family Services to seek up-to-date contact information for these relatives. We disagree and conclude that sufficient evidence supports the juvenile court's finding that the Department fulfilled its duty of inquiry with respect to S.M. (See *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082 (*Q.M.*) [where a parent fails to provide names and contact information for extended family members, the Department's ability to conduct an exhaustive ICWA inquiry is necessarily constrained]; *D.S.*, *supra*, 46 Cal.App.5th at p. 1053 [the Department is not required to " 'cast about' " for information].)

With respect to E.C., mother and D.O. fault the Department for not ascertaining and contacting paternal relatives beyond D.O.'s mother, R.C., who denied that either she

_____

his stepfather. It makes no difference for purposes of our analysis, however.

8

or her husband had Indian ancestry.  But ICWA " 'does not require the agency to "find" unknown relatives . . . merely to make reasonable inquiries' "; " '[t]he operative concept is those people who are reasonably available to help the agency with its investigation . . . should be asked.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)  Further, the record shows that the Department also asked paternal great aunt, Y.C., who denied that either she or her husband J.C. have Indian ancestry.  Neither mother nor D.O. specify any other relatives the Department should have asked. (See *Q.M.*, *supra*, 79 Cal.App.5th at p. 1082 ["we cannot ask the agency to intuit the names of unidentified family members"].) Mother states the Department "never contacted" "other extended family members" whom D.O. asked the Department to consider for placement, but these were Y.C. and J.C., and R.C. and her partner.  As stated above, R.C. and Y.C. each denied that either they or their partners had any Indian ancestry.  This was sufficient.  (See *Dezi C.*, at p. 1141 [sufficient evidence may support ICWA finding "even if the [Department] did not inquire of *everyone* who has an interest in the child," italics added].)

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

RICHARDSON, J.